UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
KEVIN MAJOR                  :    Civ. No. 3:19CV01500(SALM)
                             :
v.                           :
                             :
ANDREW M. SAUL,              :
COMMISSIONER,                :
SOCIAL SECURITY              :
ADMINISTRATION               :    September 29, 2020
                             :
-----------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Kevin Major ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB"). Plaintiff moves to reverse the Commissioner's decision or, in the alternative, to remand for further administrative proceedings. [Doc. #13]. Defendant moves for an order affirming the decision of the Commissioner. [Doc. #18].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Rehearing **[Doc. #13]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #18]** is **GRANTED.**

1

## I.   **PROCEDURAL HISTORY**[1]

Plaintiff filed an application for DIB on November 22, 2016, alleging disability beginning May 5, 2015. See Certified Transcript of the Administrative Record, Doc. #11, compiled on October 30, 2019, (hereinafter "Tr.") at 293-96. Plaintiff's application was denied initially on July 10, 2017, see Tr. 234-43, and upon reconsideration on August 15, 2017. See Tr. 245-52.[2]

On August 7, 2018, plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") Ronald J.

---

[1] Simultaneously with his motion, plaintiff filed a "Medical Chronology[,]" which the Court construes as plaintiff's Statement of Material Facts. Doc. #13-2. Defendant did not file a responsive statement and instead "generally adopt[ed] the facts outlined in the ALJ's decision." Doc. #18 at 2 (citing Tr. 12-24).

[2] Plaintiff also filed a successful application for Supplemental Income ("SSI") and was found disabled as of July 7, 2017. See Tr. 228-29. That determination, however, is not relevant to the question of whether plaintiff qualifies for DIB. To be entitled to an award of SSI, a claimant must demonstrate that he or she became disabled at any time before the ALJ's decision. See Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 485 n.1 (2d Cir. 2012); 20 C.F.R. §§416.202, 416.203. By contrast, to be entitled to DIB, in addition to presenting evidence of his disability, a claimant must also satisfy the "insured status" requirements of the Act. See 42 U.S.C. §§423(a), (c). Accordingly, to be entitled to benefits, plaintiff must demonstrate that he was disabled prior to the expiration of his insured status, i.e., his date last insured. See Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Monette v. Astrue, 269 F. App'x 109, 111 (2d Cir. 2008); see also 20 C.F.R. §§404.130, 404.131, 404.315(a), 404.320(b). Plaintiff's date last insured is June 30, 2016. See Tr. 14. Accordingly, the relevant time period under consideration is the alleged onset date of May 5, 2015, through June 30, 2016, plaintiff's date last insured.

Thomas. See generally Tr. 33-57. Vocational Expert ("VE") Edmond
J. Calandra appeared and testified by telephone at the hearing.
See Tr. 33, Tr. 52-57. On September 26, 2018, the ALJ issued an
unfavorable decision. See Tr. 9-24. On July 30, 2019, the
Appeals Council denied plaintiff's request for review of the
ALJ's decision, thereby making the ALJ's September 26, 2018,
decision the final decision of the Commissioner. See Tr. 1-6.
The case is now ripe for review under 42 U.S.C. §405(g).

## II.   STANDARD OF REVIEW

The review of a Social Security disability determination
involves two levels of inquiry. First, the Court must decide
whether the Commissioner applied the correct legal principles in
making the determination. Second, the Court must decide whether
the determination is supported by substantial evidence. See
Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Substantial
evidence is evidence that a reasonable mind would accept as
adequate to support a conclusion; it is more than a "mere
scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)
(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229
(1938)). The reviewing court's responsibility is to ensure that
a claim has been fairly evaluated by the ALJ. See Grey v.
Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review –
evaluating whether substantial evidence supports the ALJ's

conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-

4

61 (2d Cir. 1988) (citing <u>Carroll v. Sec. Health and Human Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." <u>Johnston v. Colvin</u>, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507 (2d Cir. 2009)).

Finally, some of the Regulations cited in this decision were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." <u>Smith v. Comm'r</u>, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" <u>Rodriguez v. Colvin</u>, No. 3:15CV01723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); <u>White v. Comm'r</u>, No. 17CV04524(JS), 2018 WL 4783974, at

*4 n.4 (E.D.N.Y. Sept. 30, 2018) ("'While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect.'" (citation omitted)). When a regulation that has changed is cited herein, the Court cites to the version in effect at the time plaintiff filed his DIB application.

III. **SSA LEGAL STANDARD**

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1520(c) (requiring that an impairment or combination of impairments "significantly limit[]

6

... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity ("RFC") is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

IV.   <u>**THE ALJ'S DECISION**</u>

Following the above-described evaluation process, the ALJ concluded that plaintiff "was not under a disability, as defined in the Social Security Act, at any time from May 5, 2015, the alleged onset date, through June 30, 2016, the date last insured[.]" Tr. 24. The ALJ initially determined that plaintiff "last met the insured status requirements of the Social Security Act on June 30, 2016." Tr. 14. Accordingly, the ALJ determined that "the period at issue runs from the alleged onset date of May 5, 2015, through the date last insured of June 30, 2016." Tr. 15; <u>see also</u> note 2, <u>supra</u>.

At step one, the ALJ found that plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of May 5, 2015 through his date last insured of June 30, 2016[.]" Tr. 15. At step two, the ALJ found that, "[t]hrough the date last insured," plaintiff "had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the hips, hearing loss, obesity, and depression." <u>Id.</u> The ALJ found that plaintiff's "residual effects of cerebral vascular accident, diabetes mellitus, and hypertension[]" were nonsevere impairments. <u>Id.</u>

At step three, the ALJ determined that "[t]hrough the date last insured," plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any

9

of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Tr. 16. The ALJ "specifically considered listings 1.02, 1.04, 2.10, and 12.04." Tr. 16. The ALJ also "evaluated [plaintiff's] obesity under the listings in accordance with SSR 02-1p." Id.

Before moving on to step four, the ALJ found that, "through the date last insured," plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except he could occasionally twist, squat, kneel, crawl, climb, bend, and balance; could never climb ropes, ladders, or scaffolds; could work in a setting free of hazards such as heights, vibration, and dangerous machinery, but could drive; could work in a setting free from excessive noise; could perform simple, routine, repetitive work that did not require teamwork or working closely with the public; and could occasionally interact with co-workers, public, or supervisors.

Tr. 18.

At step four, the ALJ concluded that "[t]hrough the date last insured, [plaintiff] was unable to perform any past relevant work[.]" Tr. 23. At step five, considering plaintiff's "age, education, work experience, and" RFC, the ALJ found that during the relevant time period "there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed[.]" Id.

## V. __DISCUSSION__

Plaintiff claims the following errors: (1) the ALJ erred at step two by failing to include the residual effects of plaintiff's cerebral vascular accident ("CVA") as a severe

10

impairment, see Doc. #13-1 at 7-8; (2) the ALJ "misstated" certain evidence of record, id. at 7-9; (3) the ALJ failed to appropriately weigh certain medical opinions, see Doc. #13-1 at 12-14; and (4) the RFC determination is not supported by substantial evidence and fails to include certain limitations, see id. at 14-20. The Court addresses plaintiff's arguments in turn.

A.   Step Two

Plaintiff asserts that "the ALJ minimized the effects of Mr. Major's neurocognitive impairment[] [from plaintiff's CVA] ... at the Step Two severity findings," and as a result, the "findings at Step Two are not supported." Doc. #13-1 at 7. The Court construes this argument as asserting that the ALJ erred at step two by failing to identify CVA as a severe impairment.

At step two, the ALJ "consider[s] the medical severity of" a claimant's "impairment(s)." 20 C.F.R. §404.1520(a)(4)(ii). At this step, a plaintiff carries the burden of establishing that he is disabled and must provide the evidence necessary to make determinations as to his disability. See 20 C.F.R. §404.1512(a). An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. See Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). An impairment is "not severe" if it constitutes only a slight abnormality having a minimal effect on

an individual's ability to perform basic work activities. See
id.

    If the ALJ finds <u>any</u> impairment to be severe, "'the
question whether the ALJ characterized any other alleged
impairment as severe or not severe is of little consequence.'"
<u>Jones-Reid v. Astrue</u>, 934 F. Supp. 2d 381, 402 (D. Conn. 2012)
(quoting <u>Pompa v. Comm'r of Soc. Sec.</u>, 73 F. App'x 801, 803 (6th
Cir. 2003)), <u>aff'd</u>, 515 F. App'x 32 (2d Cir. 2013). "Under the
regulations, once the ALJ determines that a claimant has at
least one severe impairment, the ALJ must consider all
impairments, severe and non-severe, in the remaining steps."
<u>Pompa</u>, 73 F. App'x at 803. Therefore, as long as the ALJ
considers all impairments at subsequent stages of the analysis,
failure to find a particular condition "severe" at step two,
even if erroneous, constitutes harmless error. See <u>Reices-Colon</u>
<u>v. Astrue</u>, 523 F. App'x 796, 798 (2d Cir. 2013); <u>see also</u>
<u>O'Connell v. Colvin</u>, 558 F. App'x 63, 65 (2d Cir. 2014)
("Because this condition was considered during the subsequent
steps, any error was harmless.").

    Here, the ALJ found several of plaintiff's impairments to
be severe at step two, and then proceeded with the sequential
evaluation. <u>See generally</u> Tr. 15-24. The ALJ also specifically
considered plaintiff's CVA, which he found to be a non-severe

impairment. See Tr. 15-16. The ALJ explained his findings at
length:

> Overall, the record shows [that plaintiff's non-severe]
> conditions were being managed medically, and should be
> amenable to proper control by adherence to recommended
> medical management and medication compliance.
> Additionally, no aggressive treatment was recommended or
> anticipated for these conditions. Furthermore, the State
> agency medical and psychological consultants determined
> the claimant's [CVA] is nonsevere because it occurred in
> 2010, long before the alleged onset date, and post-CVA
> diagnostic testing shows he retained average cognitive
> and intellectual abilities. (Exhibits 3A and 7A). These
> opinions are highly probative because the State agency
> consultants provided persuasive reasoning based on
> specific medical evidence in the record to support their
> determination that these conditions are nonsevere.
> Moreover, findings of fact made by State agency medical
> professionals regarding the nature and severity of an
> individual's impairments are granted probative weight as
> expert opinion evidence by a non-examining source.

Tr. 16.

The ALJ expressly considered plaintiff's CVA in subsequent
steps of the sequential evaluation. At step three, the ALJ
considered Dr. Cohen's opinion regarding plaintiff's
intellectual functioning since his stroke. See Tr. 17. The ALJ
explicitly referenced plaintiff's CVA when determining
plaintiff's RFC. See Tr. 19-20. The ALJ also considered
plaintiff's testimony regarding "residual symptoms" from his
CVA, including the effects on his activities of daily living.
Tr. 19. Accordingly, even if the ALJ erred in his step two
severity findings, any error would be harmless and would not
require remand. See Rivera v. Colvin, 592 F. App'x 32, 33 (2d

Cir. 2015) ("However, even assuming that the ALJ erred at step two, this error was harmless, as the ALJ considered both [plaintiff's] severe and non-severe impairments as he worked through the later steps.").

B.   Alleged Misstatements of the Record

Plaintiff asserts that the ALJ cherry-picked and misstated the record, and therefore, the ALJ's decision is not supported by substantial evidence. See Doc. #13-1 at 7-10. Defendant responds that plaintiff's argument is "meritless[,]" and "each of the alleged factual errors identified by Plaintiff are actually well supported by the medical record." Doc. #18 at 5.

1.   Memory

Plaintiff asserts that the following constitutes a "misstatement" of the record:

> [T]he ALJ wrote that Mr. Major's "... allegations regarding the intensity, frequency, and limiting effects of his impairment is not consistent with the longitudinal record from the period at issue. Regarding [his] mental impairments, diagnostic testing shows the claimant had modest memory impairment, but it was expected to improve." (Tr. 20).

Doc. #13-1 at 8 (sic).[3] Plaintiff asserts that "no treatment notes from the longitudinal record reflect a significant

---

[3] It is unclear whether plaintiff attempts to challenge the ALJ's credibility findings as part of this argument. Regardless, plaintiff has failed to assert any specific error in the ALJ's credibility determination. Accordingly, because plaintiff has failed to sufficiently develop any argument regarding the ALJ's credibility findings, the Court will not address it. See Moslow

improvement of his cognition after the initial rehabilitation in 2010." Doc. #13-1 at 9. Defendant contends that "examination findings consistently showed normal mental functioning." Doc. #18 at 6.

Plaintiff's argument mischaracterizes the ALJ's decision and the record. First, the ALJ did not state that plaintiff's condition significantly improved, but, rather, that testing reflected a modest memory impairment that was <u>expected</u> to improve. <u>See</u> Tr. 20. Nevertheless, the record supports the ALJ's conclusion that plaintiff's memory impairment was "modest" during the relevant time period. <u>See, e.g.</u>, Tr. 765 (August 14, 2015, treatment note: Plaintiff was "alert and cooperative[,]" with "normal mood and affect; normal attention span and concentration."); Tr. 802 (November 25, 2015, treatment note with the same findings); Tr. 996 (March 4, 2016, consultative examination: "It appears that his short-term working memory is modestly impaired but with repetition he can eventually bring this up to average ranges."); Tr. 993-94 (consultative examination test results reflecting that in March 2016, plaintiff had a "Working Memory Index" in the sixty-third percentile); Tr. 1125 (March 23, 2016, Mental Status Examination

<u>v. Berryhill</u>, No. 1:16CV00198(MAT), 2019 WL 1508045, at *2 (W.D.N.Y. Apr. 4, 2019) ("Here, Plaintiff has failed to assert any specific error the ALJ made in his evaluation of Plaintiff's credibility and has therefore waived any such argument.").

reflecting intact memory, normal attention and concentration, and grossly intact cognition); Tr. 1045 (July 26, 2016, treatment note: "No focal neurological deficit observed."); Tr. 1335 (May 15, 2017, encounter note: "Historically in regards to his stroke, he has occasional memory lapses[.]"). Although plaintiff's primary care physician stated that plaintiff had "poor short term" memory, Tr. 1317, she nevertheless opined that plaintiff had very little to no deficits in task performance. See Tr. 1319.

To the extent plaintiff relies on evidence more in his favor, see Doc. #13-1 at 9, the question is not whether substantial evidence supports plaintiff's position, but rather, whether substantial evidence supports the ALJ's decision. See Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision."). For reasons stated, substantial evidence supports the ALJ's finding that plaintiff suffered from only a modest memory impairment, and there is no error.

### 2.  Ability to Live Independently

Next, plaintiff contends that the ALJ "misstated Mr. Major's mode of living" by concluding that he was able to live

16

independently. Doc. #13-1 at 9 (citing Tr. 20).[4] Plaintiff asserts that the ALJ erred in his conclusion because plaintiff lived with his sister and brother-in-law during the relevant time period. See id.[5] Defendant responds that the record supports the ALJ's finding that plaintiff was "able to live independently." Doc. #18 at 6 (citing Tr. 1125).

Following plaintiff's discharge from the Yale Psychiatric Hospital in 2012, plaintiff resided with his sister and brother-in law and continued to live with them during the relevant time period. See Tr. 44. There is no dispute on that point. Nevertheless, the record supports the ALJ's conclusion that plaintiff was able to live independently, a point plaintiff appears to conflate with living alone.

Although plaintiff resided with his sister and brother-in-law, plaintiff testified that they both worked outside of the home. See Tr. 36. This suggests that plaintiff did not require constant supervision or care. Plaintiff also testified that he cared for the household pet, cooked, and drove himself to medical appointments. See Tr. 44. Plaintiff's self-reported

---

[4] The ALJ made this finding as part of his Paragraph B finding that plaintiff "experienced mild limitation[]" in "adapting or managing oneself[.]" Tr. 18.

[5] While plaintiff asserts that the ALJ made several "misstatements" of the record, plaintiff does not explain how this alleged error affected the ultimate outcome of the ALJ's decision.

activities of daily living indicated that plaintiff was
functioning independently during the relevant time period. See
generally Tr. 310-17 (December 29, 2015, Activities of Daily
Living Report: Plaintiff was able to prepare meals, tend to
personal care, complete household chores, drive, shop, and pay
bills); see also Tr. 1137 (December 23, 2015, Bariatric
Nutrition Assessment: Plaintiff "lives with sister husband;
Kevin cooks and shops for self" (sic)). Medical records from the
relevant time period and beyond also confirm that conclusion.
See, e.g., Tr. 1000 (Dr. Cohen Consultative Examination dated
March 3, 2016: "If [plaintiff] does receive disability benefits
he does have the intellectual and functional capacities to
continue managing his financial affairs."); Tr. 1125 (March 23,
2016, treatment note: "Mr. Major's strengths include: ... able
to live independently"); Tr. 1335 (May 15, 2017, treatment note:
"Activities of daily living: independent."); Tr. 1139 (February
16, 2017, treatment note: "Activities of daily living:
independent.").

Accordingly, substantial evidence supports the ALJ's
conclusion that plaintiff was able to live independently, and
there is no error on that point. Contra Barton v. Astrue, No.
3:08CV00810(FJS)(VEB), 2009 WL 5067526, at *7 (N.D.N.Y. Dec. 16,
2009) (ALJ erred by concluding the claimant did not have
deficits in adaptive functioning where, inter alia "he lives

with his mother; ... does not drive and always depended upon his now deceased father to drive him to work; cares for his own personal grooming and makes some of his own meals, but does not independently shop, clean, or perform any other activities of daily living[.]" (citation to the record omitted)).

    C.   Evaluation of Opinion Evidence

Plaintiff asserts that the ALJ improperly weighed several medical opinions of record. See generally Doc. #13-1 at 12-14. Defendant responds that plaintiff's argument "is meritless[]" and that plaintiff "has not identified any judicial error, legal or otherwise, but merely seeks a reweighing of the evidence in a manner more favorable to her claim." Doc. #18 at 7 (sic).

The record contains numerous medical opinions. The ALJ assigned the following weight to five of those opinions:[6] First,

---

[6] The record also contains two Physical Residual Functional Capacity Assessments by the State agency medical consultants at the initial and reconsideration levels. See Tr. 138-39 (Opinion of Dr. Golkar), Tr. 190-92 (Opinion of Dr. Singh). Although the ALJ did not explicitly address the weight assigned to these opinions, the ALJ considered these opinions at step two of the sequential analysis. See Tr. 16. The Court is able to glean that "some" meaningful, but not controlling, weight was assigned to these opinions. The ALJ adopted the majority of the State agency medical consultants' physical RFC findings, but generally provided greater restrictions with respect to certain environmental and postural limitations. See Tr. 18. Additionally, the ALJ's rationale with respect to the opinions of the State agency psychological consultants, to which he assigned some weight, is equally applicable to the opinions of Dr. Singh and Dr. Golkar, who also did not examine plaintiff and did not review evidence submitted at the hearing level. See Tr. 22. See also Hanchett v. Colvin, 198 F. Supp. 3d 252, 262-63

the ALJ assigned "some weight" to the March 3, 2016,
consultative examination report by Jeffrey Cohen, Ph.D. Tr. 22
(citing 991-1001). Second, the ALJ assigned "little weight" to
the January 20, 2017, impairment questionnaire by treating
physician, Sally Bergwerk, M.D. Id. (citing Tr. 1316-20). Third,
the ALJ assigned "little weight" to the June 23, 2017,
consultative examination report by Ruth Grant, Ph.D. Id. (citing
Tr. 1379-84). Fourth, the ALJ assigned "some weight" to the June
28, 2017, Mental Residual Functional Capacity Assessment by
Michelle Nitto Leveille, Psy.D., the State agency psychological
consultant at the initial level. Id. (citing Tr. 139-41). Fifth,
the ALJ assigned "some weight" to the August 14, 2017, Mental
Residual Functional Capacity Assessment by Robert Decarli,
Psy.D., the State agency psychological consultant at the
reconsideration level. Id. (citing Tr. 192-94).

---

(W.D.N.Y. 2016) ("Although the ALJ did not assign any specific
weight to the ... opinion of LMSW Faraco, any error ... is
harmless because the Court is able to glean the ALJ's
reasoning[.]"); Swain v. Colvin, No. 1:14CV00869 (MAT), 2017 WL
2472224, at *3 (W.D.N.Y. June 8, 2017) ("[I]t is well-
established that the failure to explicitly assign weight to an
opinion is harmless in certain situations, such as where the
ALJ's decision reflects that the opinion was considered or where
the limitations assessed in the opinion are ultimately accounted
for in the RFC." (citation and quotation marks omitted)).
Additionally, plaintiff does not claim error on this specific
point, and therefore, the Court will not further address this
point.

Plaintiff specifically takes issue with the weight assigned
to the opinions of consultative examiners Dr. Jeffrey Cohen and
Dr. Susan Grant. See Doc. #13-1 at 12-14.

    1.  *Applicable Law*

When evaluating any opinion, including the opinion of a
consultative examiner, an ALJ is to consider the factors set out
in 20 C.F.R. §404.1527(c). See Speilberg v. Barnhart, 367 F.
Supp. 2d 276, 281 (E.D.N.Y. 2005); Elder v. Comm'r of Soc. Sec.,
No. 15CV07370(MKB), 2017 WL 1247923, at *11 (E.D.N.Y. Mar. 24,
2017). These factors include the: length of treatment
relationship; frequency of examination; nature and extent of the
treatment relationship; relevant evidence used to support the
opinion; consistency of the opinion with the entire record; and
expertise and specialized knowledge of the treating source. See
20 C.F.R. §§404.1527(c)(1)-(6).

Generally, "a consulting physician's opinions or report
should be given limited weight. This is justified
because consultative exams are often brief, are generally
performed without benefit or review of claimant's medical
history and, at best, only give a glimpse of the claimant on a
single day." Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990);
see also Best v. Comm'r of Soc. Sec., No. 18CV05751(PKC), 2020
WL 1550251, at *7 (E.D.N.Y. Mar. 31, 2020) ("In general, a

consulting physician's opinions or report should be given limited weight." (citations and quotation marks omitted)).

> 2.   *Dr. Jeffrey Cohen, Consultative Examiner*

Plaintiff asserts that the ALJ erred by assigning Dr. Cohen's opinion "some weight[.]" Doc. #13-1 at 12 (quoting Tr. 22). Plaintiff asserts that the ALJ should have assigned Dr. Cohen's opinion significant weight because he completed an "in-depth evaluation[,]" "is a specialist in the field of psychology[,]" "his opinion is based on objective psychological testing," and his opinion is "supported by the longitudinal record[.]" Doc. #13-1 at 12-13.

Substantial evidence supports the ALJ's decision to assign Dr. Cohen's opinion "some weight." First, as the ALJ acknowledged, Dr. Cohen "did not treat the claimant, but he did thoroughly examine the claimant and administered diagnostic testing." Tr. 22. Generally, "more weight" is assigned to the opinions of

> treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from ... reports of individual examinations, such as consultative examinations[.]

20 C.F.R. §404.1527(c)(2). Additionally, Dr. Cohen's report indicates that while plaintiff provided him with an oral medical history, Dr. Cohen did not review any of plaintiff's medical

records. See Tr. 991-1000; see also Tr. 992 (Dr. Cohen's report using language such as "Mr. Major reported" and "[t]he claimant reported" in the "Medical History" section of his consultative examination report).

Second, the ALJ considered the inconsistencies between Dr. Cohen's "one-time examination" and other evidence reflecting less severe mental limitations. Tr. 22. The ALJ highlighted two records in this analysis: the first, a mental status examination from March 23, 2016, which reflected entirely normal results, see Tr. 1125; and the second, a "Psych" examination, which also reflected that plaintiff had a "normal mood and affect; normal attention span and concentration[,]" Tr. 765 (sic). Other records from the relevant time period also support the ALJ's conclusion that Dr. Cohen's opinion was inconsistent with the longitudinal record. See, e.g., Tr. 802 (November 25, 2015, treatment note: Plaintiff was "alert and cooperative[,]" with a "normal mood and affect; normal attention span and concentration."); Tr. 1040 (June 11, 2016, Psychiatric examination: "Cooperative, Alert and oriented to person, place, time and situation and appropriate mood & affect." (sic)). "Generally, the more consistent a medical opinion is with the

record as a whole, the more weight" that will be assigned to that medical opinion. 20 C.F.R. §404.1527(c)(4).[7]

Plaintiff contends that "Dr. Cohen's in-depth evaluation is much more reliable than any mini mental status examination that is completed in passing." Doc. #13-1 at 12. As defendant rightly contends, plaintiff essentially seeks a reweighing of the evidence in his favor. However, it is well settled that "[i]t is for the SSA, and not this court, to weigh the conflicting evidence in the record." Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998).

Accordingly, substantial evidence supports the weight assigned to the opinion of Dr. Cohen. See Elder, 2017 WL 1247923, at *11 ("[T]he opinion of a consultative examiner does not bind an ALJ.").

### 3.   Dr. Susan Grant, Consultative Examiner

Plaintiff asserts that the ALJ erred by assigning Dr. Grant's opinion "little weight[.]" Doc. #13-1 at 13. The ALJ assigned "little weight" to this opinion because "Dr. Grant did not treat the claimant. She examined him a year after he was last insured for benefits. Her examination therefore have little probative value for the period at issue." Tr. 22 (sic). Plaintiff asserts that Dr. Grant's opinion should have been

---

[7] The ALJ also considered that Dr. Cohen was an "acceptable medical source[]" and "a specialist." Tr. 22.

given significant weight because Dr. Grant is "a clinical psychologist and a specialist in her field[]" and her opinion "is consistent with the record." Doc. #13-1 at 14. Plaintiff also asserts that "because this opinion was issued after the [date last insured] is not a reason to minimize the weight it is due." Id. at 13.

The ALJ's decision to assign "little" weight to Dr. Grant's is supported by substantial evidence. First, as a consultative examiner, Dr. Grant's opinion was generally entitled to "limited weight[.]" Cruz, 912 F.2d at 13.

Second, the ALJ appropriately considered that Dr. Grant did not treat plaintiff. See Tr. 22; see also Tr. 1383 (Dr. Grant Opinion: "The above-mentioned claimant was examined for a consultative examination. No doctor-patient relationship exists or is implied by this examination."). Again, to reiterate, an opinion is entitled to more weight where the medical provider has a treating relationship with plaintiff. See 20 C.F.R. §404.1527(c)(2)(i)-(ii).

Third, the ALJ appropriately considered "[o]ther factors[,] ... which tend to support or contradict the medical opinion." 20 C.F.R. §404.1527(c)(6). Specifically, the ALJ explained that because Dr. Grant "examined [plaintiff] a year after he was last insured for benefits[,] ... [h]er examination [had] little probative value for the period at issue." Tr. 22. The relevant

time period in this case is May 5, 2015, plaintiff's alleged
onset date, to June 30, 2016, plaintiff's date last insured. Dr.
Grant examined plaintiff on June 23, 2017, almost exactly one
year after plaintiff's date last insured. See Tr. 1379-84.
Plaintiff contends that this "is not a reason to minimize" the
weight assigned to the opinion. Doc. #13-1 at 13. The Court
disagrees. "A medical opinion rendered well after a plaintiff's
date last insured may be of little, or no, probative value
regarding plaintiff's condition during the relevant time
period." Patterson v. Comm'r of Soc. Sec., No. 1:18CV00556(WBC),
2019 WL 4573752, at *5 (W.D.N.Y. Sept. 20, 2019). This is
particularly true where, as here, there is no indication that
Dr. Grant's opinion is retrospective. See id. at *6 (ALJ
appropriately assigned little weight to medical opinion rendered
after plaintiff's date last insured where the opinion did not
indicate that it was retrospective and plaintiff did not begin
treating with that provider until after the date last insured).
Indeed, the opinion itself details plaintiff's "current
functioning[,]" Tr. 1380, and is written in the present tense,
see Tr. 1382. Accordingly, "[t]he ALJ did not commit legal error
in taking into consideration the timing of the opinion[][.]"
Durakovic v. Comm'r of Soc. Sec., No. 3:17CV00894(TJM)(WBC),
2018 WL 4039372, at *7 (N.D.N.Y. May 30, 2018), report and
recommendation adopted, 2018 WL 4033757 (Aug. 23, 2018); see

also <u>Schley v. Comm'r of Soc. Sec. Admin.</u>, No. 18CV04918(KAM),
2020 WL 5077249, at *7 (E.D.N.Y. Aug. 27, 2020) (ALJ "did not
commit legal error by assigning little weight to the two medical
opinions that were rendered in 2017, even though they were
opinions of treating physicians, because those opinions were
only applicable to the period after plaintiff was last
insured.").

Finally, plaintiff contends that Dr. Grant's opinion is
consistent with the record. <u>See</u> Doc. #13-1 at 14. Dr. Grant's
opinion is not consistent with the record for the same reasons
Dr. Cohen's opinion is not consistent with the record. <u>See</u>
Section V.C.2., <u>supra</u>. Additionally, Dr. Grant diagnosed
plaintiff with major depressive disorder. <u>See</u> Tr. 1382. However,
during the relevant time period plaintiff denied experiencing
depression. <u>See, e.g.</u>, Tr. 1110 (March 22, 2016, review of
systems: "Behavioral/Psychiatric & Syndromes: Negative"); Tr.
1113 (June 1, 2016, treatment note: Plaintiff "denies depression
or anxiety."). In March 2016, it was also noted that plaintiff's
prior diagnosis of major depressive disorder was "now in
remission." Tr. 1122.

Accordingly, for the reasons stated, substantial evidence
supports the assignment of "little weight" to the opinion of Dr.
Grant.

D.   <u>The RFC Determination</u>

Plaintiff takes issue with several aspects of the RFC determination. <u>See</u> Doc. #13-1 at 15-21. First, plaintiff asserts that "the ALJ had no opinion on which to rely[]" when making the RFC determination. <u>Id.</u> at 15. Second, plaintiff asserts that the ALJ should have limited plaintiff to sedentary work, and failed to include certain limitations in the RFC determination. <u>See id.</u> at 16-21.

Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." <u>Greek v. Colvin</u>, 802 F.3d 370, 374 n.2 (2d Cir. 2015); <u>see also</u> 20 C.F.R. §404.1545(a)(1). The RFC determination is assessed "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§404.1545(a)(1), (3).

1.   *Opinion Evidence*

Plaintiff contends that because the ALJ assigned only "little" or "some" weight to the medical opinions, the ALJ "had no opinion on which to rely[]" when formulating plaintiff's RFC. Doc. #13-1 at 15. Defendant responds that the opinions of Dr. Bergwerk, Dr. Leveille, and Dr. Decarli each "provided support for the ALJ's mental RFC determination." Doc. #18 at 10.

Plaintiff's contention that the ALJ had "no opinion evidence on which to rely[]" is not well-founded. Doc. #13-1 at

15. While the ALJ did not give great or controlling weight to
any medical opinion, he considered all of the opinions in the
record and assigned each opinion little or some weight. See Tr.
21-22.[8] Nevertheless, plaintiff maintains that "as a result of
the diminished weight assignments, ... [t]he ALJ was left with
no reliable opinion evidence on which to base his RFC
description." Doc. #13-1 at 15.

Some courts have held that "if an [ALJ] gives only <u>little
weight</u> to <u>all</u> the medical opinions of record, the [ALJ] creates
an evidentiary gap that warrants remand." <u>Waldock v. Saul</u>, No.
18CV06597(MJP), 2020 WL 1080412, at *3 (W.D.N.Y. Mar. 6, 2020)
(citations omitted) (emphases added).[9] Plaintiff cites two cases
in support of her position, each of which is inapposite to the
circumstances here. See Doc. #13-1 at 15. First, in <u>Trombley v.
Berryhill</u>, the ALJ assigned "little" weight to <u>each</u> of the
opinions of record. <u>Trombley</u>, No. 1:17CV00131(MAT), 2019 WL
1198354, at *4 (W.D.N.Y. Mar. 14, 2019). Similarly, in <u>Kurlan v.
Berryhill</u>, the ALJ "gave little or no weight to the medical

---

[8] As previously stated, although the ALJ did not explicitly weigh
the opinions of Dr. Singh and Dr. Golkar, it is apparent that
the ALJ considered those opinions, and assigned some weight to
them.

[9] The undersigned does not adopt this view, but because this case
does not squarely present the question, the Court need not
determine whether multiple opinions assigned "little weight"
may, <u>collectively</u>, provide sufficient evidence on which an ALJ
may base the RFC.

opinions in the record." <u>Kurlan</u>, No. 3:18CV00062(MPS), 2019 WL 978817, at *2 (D. Conn. Feb. 28, 2019).

Here, by contrast, the ALJ assigned <u>some</u> weight to several opinions of record. <u>See</u> Tr. 22. Because the ALJ adopted many of the restrictions set forth in the opinions of the State agency medical and psychological consultants, it is apparent that the weight assigned to those opinions was meaningful. Accordingly, the ALJ did not create an evidentiary gap with his treatment of the medical opinion evidence. <u>See</u> <u>Aurilio v. Berryhill</u>, No. 3:18CV00587(MPS), 2019 WL 4438196, at *8 (D. Conn. Sept. 16, 2019) (suggesting that an assignment of "partial weight" to a medical opinion does not create an evidentiary gap warranting remand); <u>Dinapoli v. Berryhill</u>, No. 6:17CV06760(MAT), 2019 WL 275685, at *3 (W.D.N.Y. Jan. 22, 2019) ("The fact that the ALJ gave no more than partial weight to the two opinions of record concerning Plaintiff's physical condition does not create the 'evidentiary gap' claimed by Plaintiff.").[10]

---

[10] The Court is aware of recent unreported decisions finding that the assignment of "some" weight to all or some opinions creates an evidentiary gap. <u>See, e.g.</u>, <u>Cummings v. Comm'r of Soc. Sec.</u>, No. 18CV00187(FPG), 2020 WL 5045038, at *7 (W.D.N.Y. Aug. 26, 2020) ("[T]he ALJ's rejection of Dr. Bassig's opinion, as well as her providing some weight to the opinion of consultative examiner Donna Miller, D.O., created an evidentiary gap in the record[.]"); <u>Frost v. Comm'r of Soc. Sec.</u>, No. 1:19CV00422(JJM), 2020 WL 4333335, at *6 (W.D.N.Y. July 28, 2020) (assignment of "some weight" to medical opinion did not fill evidentiary gap where remaining opinions were assigned "limited" and "minimal" weight). The Court declines to engage in the semantics of

"Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). That is what the ALJ did here. To reiterate, the ALJ found that plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except he could occasionally twist, squat, kneel, crawl, climb, bend, and balance; could never climb ropes, ladders, or scaffolds; could work in a setting free of hazards such as heights, vibration, and dangerous machinery, but could drive; could work in a setting free from excessive noise; could perform simple, routine, repetitive work that did not require teamwork or working closely with the public; and could occasionally interact with co-workers, public, or supervisors.

Tr. 18.

The ALJ's finding that plaintiff is capable of light work, with additional postural limitations, is generally supported by the opinions of the State agency medical consultants Dr. Golkar and Dr. Singh, each of whom opined that plaintiff was capable of light work. See Tr. Tr. 138-39, Tr. 190-92; see also 20 C.F.R. §404.1527(b) (defining light work). Plaintiff's self-reported activities during the relevant time period also support the

---

parsing the terms "some" and "partial," considering that here, the RFC actually found establishes that the ALJ's assignment of "some" weight to the opinions of the State agency consultants was meaningful.

ALJ's findings, including that plaintiff drove, regularly rode his bike, and exercised. See, e.g., Tr. 45-46, Tr. 313, Tr. 1122, Tr. 1137. Treatment notes from the relevant time period also reflected normal examination findings, including normal stance and gait. See, e.g., Tr. 765, Tr. 802, Tr. 1040, Tr. 1116, Tr. 1125, Tr. 1128, Tr. 1443.[11]

The restriction of plaintiff to "simple, routine, repetitive work" is also supported by the opinions of record. For example, Dr. Cohen's opinion noted that plaintiff had difficulty with complex tasks, that plaintiff functions slowly when learning new tasks, and that repetition increases plaintiff's cognitive function. See Tr. 998-99. Similarly, Dr. Leveille opined that plaintiff could engage in simple, routine, repetitive tasks. See Tr. 140-41. Dr. Leveille also opined that plaintiff was "moderately limited" in his "ability to interact appropriately with the general public[]" and his "ability to accept instructions and respond appropriately to criticism from supervisors." Tr. 141. Dr. Decarli similarly opined that plaintiff "will have difficulty [with] multi-step tasks but can understand and recall simple ones." Tr. 192. Dr. Bergwerk, plaintiff's treating physician, opined that plaintiff would have

---

[11] The Court does not address the RFC's environmental limitations, which do not appear to be contested.

no difficulties carrying out single-step instructions. <u>See</u> Tr. 1319.

The social limitations in the RFC, <u>i.e.</u>, that plaintiff could perform jobs that did "not require teamwork or working closely with the public; and could occasionally interact with co-workers, public, or supervisors[,]" are also supported by the opinion evidence. Tr. 18. For example, both Dr. Leveille and Dr. Decarli opined that plaintiff was "[m]oderately limited" in his abilities to "interact appropriately with the general public[]" and to "accept instructions and respond appropriate to criticism from supervisors." Tr. 141, Tr. 193. Dr. Decarli further opined that "complex interpersonal interactions will be difficult[,]" but that plaintiff "can relate to others for task purposes, [and] can ask simple questions[.]" Tr. 193.

Accordingly, "there was sufficient evidence, as discussed above, including opinions from several medical sources, from which the ALJ could reach a conclusion as to the plaintiff's RFC." <u>Marcille v. Berryhill</u>, No. 3:17CV01620(RMS), 2018 WL 5995485, at *15 (D. Conn. Nov. 15, 2018). "Even though the ALJ's RFC determination does not perfectly correspond with the opinions of the medical sources in the record, it is clear that it accounts for all of the evidence in, and is consistent with, the record" as applicable to the relevant time period. <u>Rivera v. Berryhill</u>, No. 3:17CV01726(RMS), 2018 WL 6522901, at *17 (D.

Conn. Dec. 12, 2018) (citation and internal quotation marks
omitted). Therefore, plaintiff's argument that the ALJ had no
opinion evidence on which to rely is without merit.

    *2.   Sedentary Work*

    Plaintiff asserts that the he "should be limited to
sedentary exertion work" because of his "low back pain with
diagnoses of lumbar degenerative disc disease, bilateral primary
osteoarthritis of the hip, lumbar stenosis with neurogenic
claudication, right hemiplegia, history of stroke, and long-term
use of aspirin therapy." Doc. #13-1 at 17 (citing Tr. 1338).
Notably, the records on which plaintiff relies in support of
this position generally pre- or post-date the relevant time
period, and therefore are not strongly probative of whether
plaintiff was limited to sedentary work during the limited
relevant timeframe. See id. (citing Tr. 1338 (April 13, 2017,
progress note); Tr. 1239 (October 24, 2016, treatment note); Tr.
1205 (December 19, 2016, treatment note); Tr. 1211 (October 31,
2016, treatment note); Tr. 1212-13 (November 8, 2016, Plan of
Care and Initial Evaluation); Tr. 1335 (May 15, 2017, progress
note); Tr. 1342 (February 16, 2017, progress note)).
Essentially, what plaintiff again seeks is a reweighing of the
evidence in his favor. A "[p]laintiff cannot meet his burden of
proving a more restrictive RFC by highlighting evidence the ALJ
considered and arguing that it should have been weighed or

considered differently." <u>Hallman v. Comm'r of Soc. Sec.</u>, No. 19CV00683(JGH), 2020 WL 3259255, at *4 (W.D.N.Y. June 16, 2020).

As previously stated, the ALJ's finding that plaintiff is capable of light work is supported by substantial evidence. <u>See</u> Section D.1., <u>supra</u>. Additionally, the ALJ explicitly considered plaintiff's allegations of right foot drop, and found "it did not manifest until after the date he was last insured." Tr. 21. This is confirmed by the objective evidence of record. During the relevant time period, plaintiff was regularly observed to have a normal stance and gait. <u>See, e.g.</u>, Tr. 765, Tr. 802, Tr. 1116, Tr. 1125, Tr. 1128, Tr. 1443. It was not until <u>after</u> plaintiff's date last insured that problems with his gait and stance began to manifest, so as to cause an impairment. <u>See, e.g.</u>, Tr. 1349 (January 10, 2017, progress note: "Observed walk in hallway. Hunched back and lean towards left leg noted. Asymmetrical gait."); Tr. 1395 (February 16, 2018, physical examination: "Non-fluid gait"); Tr. 1403 (October 26, 2017, physical examination: "Gait halting."); Tr. 1558 (July 31, 2018, progress note reflecting plaintiff's diagnosis of right foot drop).

Accordingly, the ALJ did not err by failing to limit plaintiff to sedentary work.[12]

---

[12] Plaintiff argues that if plaintiff were limited to sedentary work, then he would be found disabled under the "Grids[.]" Doc.

### 3.   Manipulative Limitations

Second, plaintiff asserts that the ALJ failed to include "Hand Use Limitations" in the RFC determination. Doc. #13-1 at 18. The majority of the records on which plaintiff relies in making this argument pre-date the alleged onset date by five years. See id. Further, as acknowledged by plaintiff, those records reflect that plaintiff met many of the goals set by his occupational therapist for improved hand use, including: improved functional status as demonstrated by improved writing legibility; independence eating and cutting food with right hand; improved right hand coordination; and "[r]ight hand strength and coordination WNL's[.]" Tr. 472. Ultimately, plaintiff was discharged from occupational therapy with "[s]ignificant improvement [] in hand manipulation tasks." Tr. 473.

Plaintiff contends that his coordination score of 25% requires a limitation of only occasional fine manipulation. See Doc. #13-1 at 19 (citing Tr. 473). However, a Neuropsychological Evaluation completed in June 2010 noted that plaintiff "very accurate[ly]" drew a "Rey design" despite there being "some fluctuating fine motor pressure." Tr. 543. Additionally,

---

#13-1 at 18. However, because substantial evidence supports the ALJ's finding that plaintiff was capable of light work during the relevant time period, the Court does not reach this argument.

plaintiff's "line bisections were generally accurate." Id.
Further, the State Agency medical consultants reviewed the
evidence relied on by plaintiff, including Dr. Cohen's opinion,
and determined that plaintiff had no manipulation limitations.
See generally Tr. 119-45, Tr. 176-98.

For these reasons, substantial evidence supports the ALJ's
decision to not include manipulative limitations in the RFC
determination. See, e.g., Broadbent v. Saul, No.
3:18CV02127(WIG), 2019 WL 4295328, at *5 (D. Conn. Sept. 11,
2019) ("[T]he record does not compel a finding that Plaintiff
required limitations to hand use[,]" where plaintiff had "mild
diminishing of grip strength" and "the state agency medical
consultants at both the initial and reconsideration levels
determined, upon review of the record, that Plaintiff had
unlimited hand use.").

### 4. Additional Supervision

Plaintiff next asserts that the ALJ should have included a
requirement for additional supervision in the RFC determination.
See Doc. #13-1 at 19. In pertinent part, plaintiff relies on the
opinions of the State agency psychological consultants that
plaintiff "may need some assistance in the early works ages to
develop a work plan and routine before being able to carry out
routine repetitive tasks independently." Id. (sic) (citing Tr.
194); see also Tr. 141 (Dr. Leveille opinion), Tr. 194 (Dr.

Decarli opinion).[13] Plaintiff appears to argue that had this limitation been included, plaintiff would be precluded from all work based on the VE's testimony that "a worker who is occasionally unable to retain new information" or "requires even occasional job reminders or additional supervision" would be eliminated from all work. Doc. #13-1 at 19 (citing Tr. 55-56).

The State agency psychological consultants each opined that plaintiff was "[m]oderately limited" in his "ability to set realistic goals or make plans independently of others." Tr. 141, Tr. 194. Each consultant then explained: "Clt may need some assistance in the early work stages to develop a work plan/routine, but could then carry out RRT independently." Id. (sic).

At the administrative hearing, the ALJ inquired: "[I]f a worker has significant difficulty learning new tasks, including very simple tasks and again, on an occasional basis is not able to retain any kind of new information to learn even simple tasks, how would that impact these jobs?" Tr. 55. The VE responded: "That would eliminate all work." Id. The ALJ also inquired: "[I]f a worker is unable to perform simple tasks independently and needs additional supervision from a supervisor, so needs frequent reminders for how to perform his

---

[13] Plaintiff also relies on records from 2012 and 2017, which fall outside the relevant time period of this case.

job, how would that impact these jobs?" Tr. 56. The ALJ again responded: "That would eliminate all work." Id.

Those hypotheticals do not comport with the State agency psychological consultants' opinions, which suggest that, like any new employee, plaintiff would require some assistance or training at the beginning of his employment. See Tr. 141, Tr. 194. Additionally, each consultant found that plaintiff was not significantly limited in his ability to sustain an ordinary routine without special supervision. See Tr. 140, Tr. 193. Each consultant also opined that plaintiff was not significantly limited in his ability to understand and remember very short and simple instructions, or to remember work-like procedures. See Tr. 140, Tr. 192. Thus, the conclusion that plaintiff may need assistance in the early work stages does not imply that he is unable to sustain employment without increased supervision.

Nevertheless, "[w]hile the RFC did not specifically require particular supervision, the ALJ did place limits on Plaintiff's functional capacity that properly reflected h[is] needs. The RFC limited Plaintiff to routine and repetitive tasks only." Tiffany C. v. Comm'r of Soc. Sec., No. 5:17CV00878(FJS)(DJS), 2018 WL 4610676, at *5 (N.D.N.Y. June 20, 2018), report and recommendation adopted sub nom. Tiffany C. v. Berryhill, 2018 WL 3344212 (July 9, 2018); see also Humes v. Comm'r of Soc. Sec., No. 3:14CV00512(GTS)(WBC), 2016 WL 11477504, at *5-*6 (N.D.N.Y.

Mar. 16, 2016) (ALJ rejected plaintiff's argument that the RFC determination "failed to account for plaintiff's need supervision[]" where the "mental RFC determination limited Plaintiff to unskilled work with the ability to respond appropriately to supervision, coworkers, and usual work situations."), report and recommendation adopted sub nom. Humes v. Colvin, 2016 WL 1417823 (Apr. 11, 2016).

Accordingly, the ALJ did not err by failing to include a requirement for additional supervision in the RFC determination.

### 5.   Off-task Behavior

Last, plaintiff asserts that the ALJ failed to include a limitation for off-task behavior in the RFC determination. See Doc. #13-1 at 19-20. Plaintiff asserts that such a limitation is supported by, inter alia, the opinions of both State agency psychological consultants who opined that plaintiff "is markedly limited in the ability to maintain attention and concentration for extended periods." Doc. #13-1 at 20 (citing Tr. 140, Tr. 193).

Although the State agency psychological consultants found plaintiff markedly impaired in his ability to maintain concentration for extended periods, see Tr. 140, Tr, 193, the ALJ ultimately concluded that plaintiff suffered just moderate difficulties in his ability to maintain concentration, persistence, and pace. See Tr. 17-18. This conclusion is

supported by the record, including examinations during the
relevant time period reflecting that plaintiff regularly
presented with normal attention and concentration. See Tr. 765,
Tr. 844, Tr. 907, Tr. 1125. Plaintiff reported that he could pay
attention for a "long time[.]" Tr. 316-17. Dr. Grant opined,
albeit after the relevant time period, that plaintiff suffered
just "moderate difficulty maintaining concentration and
attention." Tr. 1382.

    The ALJ adequately accounted for plaintiff's moderate
concentration difficulties by limiting plaintiff to "simple,
routine, repetitive work[.]" Tr. 18. See Broadbent, 2019 WL
4295328, at *5 ("The RFC limits Plaintiff to simple routine
tasks. This sufficiently accounts for Plaintiff's difficulties
with concentration, persistence, and pace, as courts routinely
find that a claimant who has moderate limitations in memory and
concentration can perform simple routine, tasks." (citation to
the record omitted)); Roberto v. Saul, No. 3:18CV01651(WIG),
2019 WL 4261806, at *5 (D. Conn. Sept. 9, 2019) ("The RFC limits
Plaintiff to simple routine tasks involving no more than simple,
short instructions and simple work-related decisions, with few
workplace changes. This sufficiently accounts for Plaintiff's
difficulties with concentration, persistence, and pace, as
courts routinely find that a claimant who has moderate
limitations in memory, concentration, and stress management can

41

perform simple, routine, repetitive tasks." (citation to the
record omitted)); Johnson v. Berryhill, No. 1:17CV00684(MAT),
2018 WL 4539622, at *6 (W.D.N.Y. Sept. 21, 2018) (A RFC limited
to simple, routine tasks accounted for claimant's "difficulties
in maintaining attention and concentration, performing complex
tasks, and learning new tasks.").

Additionally, even assuming that plaintiff suffered from
"marked" difficulties in maintaining attention and concentration
for extended periods, the State agency psychological consultants
further explained that plaintiff "can carry out simple tasks for
two hour periods in a normal work week." Tr. 140, Tr. 193. "[I]f
a job provides normal work breaks and meal periods, that would
split an eight hour workday into approximately two hour periods"
which in turn "would fall within the limitations noted by" the
State agency psychological consultants. Burke v. Berryhill, No.
3:17CV00537(AWT), 2018 WL 4462364, at *2 (D. Conn. Sept. 18,
2018) (citation and quotation marks omitted). Accordingly, the
ALJ did not err by failing to include a limitation for off-task
behavior in the RFC determination.

"Ultimately, it is Plaintiff's burden to prove a more
restrictive RFC than the RFC assessed by the ALJ." Swanson v.
Comm'r of Soc. Sec., No. 1:18CV00870(EAW), 2020 WL 362928, at *5
(W.D.N.Y. Jan. 21, 2020). Plaintiff has failed to carry that
burden. Thus, for the reasons stated, the RFC determination is

supported by substantial evidence and the ALJ did not err by failing to include additional restrictions in that determination.

**VI.   <u>CONCLUSION</u>**

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Rehearing **[Doc. #13]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #18]** is **GRANTED.**

SO ORDERED at New Haven, Connecticut, this 29th day of September, 2020.


_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE